**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THE UNITED STATES OF AMERICA,

                Plaintiff,                CRIMINAL NO.  11-20566

v.                               HONORABLE JULIAN A. COOK, JR.

TREMAYNE LAMAR HOLLINS,

                Defendant.

_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

## I.    INTRODUCTION

On November 15, 2011 the defendant, TREMAYNE LAMAR HOLLINS, pleaded guilty to possessing, obtaining or attempting to obtain contraband (marijuana) in prison, a violation of 18 U.S.C. 1791(a)(2).   The Rule 11 Agreement anticipated a sentencing guideline range of 2 to 8 months which, pursuant to statute, must be served consecutive to the federal sentence currently being served by Mr. Hollins.   The probation department agreed with this calculation and the defendant filed no objections.   Based on the nature and seriousness of the offense, Mr. Hollins' extensive criminal history and Mr. Hollins' inability to abide by court orders and prison rules (even while incarcerated on federal drug charges), the government recommends that the Court sentence Mr. Hollins to a term of incarceration of 8 months, followed by a three year term of supervised release.

II.   **STATEMENT OF FACTS**

In 2007, Mr. Hollins was convicted, in the Western District of Michigan, of conspiracy to distribute a controlled substance.  The court sentenced Mr. Hollins to 10 years in prison.  Mr. Hollins is serving his sentence at the Federal Correctional Institution, Milan, Michigan.

In 2010/2011, Milan officials were alerted to the fact that Mr. Hollins might attempt to have his wife, Kendra Hollins, smuggle contraband (marijuana) into the prison.  As a result, Milan officials began to monitor Mr. Hollins' phone calls and emails.

On February 20, 2011, Kendra Hollins visited her husband at the Milan correctional facility.  During this visit, Kendra Hollins handed Mr. Hollins seven small balloons containing marijuana.  This exchange was observed by prison officials and was videotaped.  Mr. Hollins has admitted that he intended to distribute the marijuana to other prison inmates.

III.   **ADVISORY SENTENCING GUIDELINE**

In the Rule 11 Plea Agreement, the government and Mr. Hollins calculated the advisory sentencing guideline range as 2 to 8 months based on an overall offense level of 6 and a criminal history category of III.   Pursuant to Title 18, United States, Code, Section 1791(c), any sentence of imprisonment must be consecutive to the sentence currently being served by Mr. Hollins.  The Probation department agreed with the parties' guideline calculation and Mr. Hollins filed no objections.  *See* Presentence Investigation Report (PIR) ¶¶ 60-62.

## IV.  SENTENCING GUIDELINE CALCULATIONS
### AND OTHER RELEVANT 3553(a) FACTORS

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.

## A.  The Advisory Guideline Range

In *United States v. Rita*, 551 U.S. 338 (2007), the Supreme Court restated that the goals of the United States Sentencing Commission in formulating the Sentencing Guidelines are to carry out the objectives of 18 U.S.C. § 3553(a). Despite being advisory, rather than mandatory, the Guidelines remain an important factor in fashioning a just sentence. As the Supreme Court stated in *Rita*, "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 345.

In *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008), the court, in analyzing the holding in *Rita*, recognized that the guidelines represent the Sentencing Commission's attempt to reconcile the factors under § 3553(a).  And, in *United States v.*

*Gall*, 128 S. Ct. 586, 601 (2007), the United States Supreme Court provided a template for sentencing proceedings in the district court.  The Court held that a district court should begin sentencing proceedings by correctly calculating the applicable guidelines. *Id.* at 596.   Here, the advisory guideline range is 2 to 8 months.

**B.**     **Nature and Circumstances of the Offense, and the History and Characteristics of the Offender, 18 U.S.C. § 3553(a)(1)**

Because Mr. Hollins continued to traffic narcotics in prison, after he was sentenced to a 10 year term of incarceration for distributing controlled substances, a strong message must be sent to Mr. Hollins.  Indeed, Mr. Hollins' actions indicate that he simply has no respect for the law, no respect for authority, and no desire to change his criminal ways.

**1.**     **Nature and Seriousness of the Offense**

This is, without a doubt, a very serious offense.  Mr. Hollins attempted to smuggle marijuana into the Milan correctional facility so he could sell the drugs to other inmates. He did so by enlisting his wife – the mother of his son – to smuggle the drugs into the prison.  The fact that Mr. Hollins would ask his wife to commit a federal crime so that he could peddle drugs in prison says everything about Mr. Hollins' character (or lack thereof).  He did not care if he placed his wife, or his son, in harm's way so he could continue to commit controlled substance offenses in prison. And, of course, as the PIR explained, "the integrity  of the Bureau of Prisons depends on the enforcement of prison rules and the laws of the United States."  *See* PIR ¶ 81.   Inmates are prohibited from possessing (and selling) marijuana in prison for a reason; not only is it illegal, but the sale

4

of illegal contraband can lead to violence, placing other inmates and prison officials in immediate danger.

### 2.    <u>History and Characteristics of the Offender</u>

Mr. Hollins is only 33 years old.  He is currently serving a 10 year federal sentence after he was convicted, in the Western District of Michigan, of conspiring to distribute controlled substances.  *See* PIR ¶ 32.  According to the PIR, Mr. Hollins' role in the conspiracy involved loading, unloading and processing controlled substances for distribution.  *Id*.  Mr. Hollins also obtained large amounts of drugs, on consignment, for distribution to others.  *Id*.

Prior to this federal conspiracy conviction, Mr. Hollins was given every opportunity to change his criminal ways.   In 1997, Mr. Hollins was arrested after he broke into an occupied residence.  Mr. Hollins was given a very favorable plea deal – he was allowed to plead guilty to unlawful entry without breaking (instead of home invasion) and was sentenced to just 20 days in jail.  *See* PIR ¶ 30.

Mr. Hollins did not take advantage of the chance given to him by the court.  Instead, in 2000, he was arrested for possessing marijuana. Mr. Hollins was given yet another break, and was allowed to plead guilty to the use of marijuana. Once again, Mr. Hollins received a very lenient sentence – 7 days in jail and 9 months probation.  *See* PIR ¶ 31.

Accordingly, despite being given chance after chance, Mr. Hollins has refused to change his criminal ways, even while in prison.  Mr. Hollins has also not fared well on probation – violating the terms of his probation after testing positive for marijuana on two

separate occasions.  *See* PIR ¶ 31.  This is consistent with Mr. Hollins' own admission that he abused marijuana right up until the time he was placed into custody on the federal conspiracy charges.  *Id*. ¶ 51.

In the end, the PIR paints a picture of an individual who simply cannot conform himself to the norms of society and who cannot obey orders, whether they come from the court or from prison officials.  The fact that Mr. Hollins would continue to commit criminal activity (while in prison) of the exact same variety that got him locked up, dictates that Mr. Hollins receive a significant sentence.  The fact that he involved his wife in his criminal activity only reinforces this conclusion.

**C.     Promoting Respect for Law, and Providing Just Punishment, 18 USC § 3553(a)(2)(A)**

As for the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, all of these factors favor a sentence at the high of the agreed upon sentencing guideline range.

As was discussed above, the seriousness of this offense cannot be denied. Moreover, by continuing to commit the exact same type of crime over and over again (even while in prison), Mr. Hollins has exhibited very little (if any) respect for the law.  A significant custodial sentence is, therefore, necessary, not only to punish Mr. Hollins for his actions, but also to reinforce the fact that the Court will not accept Mr. Hollins' continued criminal activity.

**D.      The Sentence Imposed Must Afford Adequate Deterrence
to Criminal Conduct and Protect the Public from Further
<u>Crimes of the Defendant, 18 U.S.C. § 3553(a)(2)(B) and (C)</u>**

Deterrence may serve to discourage others who are inclined to involve themselves in similar criminal conduct.  Deterrence is also an important consideration when fashioning a sentence that will persuade a defendant away from continuing to engage in criminal behavior.  In this case, the Court needs to send a strong message to Mr. Hollins and other inmates at the correctional facility.  Up to this point, nothing, including several lenient sentences, has deterred Mr. Hollins from engaging in a life of crime.  Given Mr. Hollins' propensity for committing crimes and his unwillingness to disengage himself from a criminal lifestyle, any request for leniency must take a back seat to punishing him for his conduct and to protecting others from Mr. Hollins.  A significant sentence is also necessary to send a message to other prisoners at the Milan correctional facility that smuggling contraband into the prison will not be tolerated and that significant consequences will flow from such unlawful activity.

V.    **CONCLUSION**

For the reasons stated above, the United States recommends that the Court impose a sentence of imprisonment of 8 months followed by three years of supervised release. Pursuant to Title 18, United States, Code, Section 1791(c), any sentence of imprisonment must be consecutive to the sentence currently being served by Mr. Hollins.

Respectfully submitted,

BARBARA L. MCQUADE
United States Attorney

s/Douglas C. Salzenstein
DOUGLAS C. SALZENSTEIN
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9196
E-Mail: doug.salzenstein@usdoj.gov

Dated:  February 1, 2012

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 1, 2012, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Gene Turnwald

/s Douglas C. Salzenstein
DOUGLAS C. SALZENSTEIN
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan  48226-3211
(313) 226-9196
doug.salzenstein@usdoj.gov

Date: February 1, 2012